UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

UNITED STATES OF AMERICA,      )
                               )
            Plaintiff,         )
                               )
      v.                       )      No. 4:08CR156 CAS
                               )                (FRB)
DONNELL McCLOUD,               )
                               )
            Defendant.         )


**MEMORANDUM, ORDER,**
**REPORT AND RECOMMENDATION**
**OF UNITED STATES MAGISTRATE JUDGE**


All pretrial motions in the above cause were referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(b). The original indictment in this cause was filed on February 28, 2008. The defendant made his initial appearance before this court in this cause on June 25, 2008. He was arraigned on June 26, 2008, and entered a plea of not guilty to all charges in the indictment. An order was entered that same date granting the defendant until July 7, 2008, in which to file pretrial motions. A pretrial evidentiary hearing was scheduled on July 15, 2008. Trial was set for September 2, 2008. On July 7, 2008, the defendant filed several motions, including a Motion to Dismiss Count 1 of the Indictment; a Motion to Suppress Evidence; and a Motion to Suppress Statements. The government responded to defendant's motions. A pretrial hearing was held on the motions on July 15, 2008.

On August 21, 2008, a superseding indictment was filed. The superseding indictment set out additional charges not made in the original indictment, which additional charges were based on events different from those underlying the charges in the original indictment. The defendant was arraigned on the superseding indictment on August 22, 2008, and entered a plea of not guilty to all charges in the superseding indictment. A second order was entered that same date granting the defendant until September 5, 2008, in which to file any motions in addition to those previously filed and relating to the new charges made in the superseding indictment. On September 2, 2008, the defendant filed a Second Motion to Dismiss Counts of the superseding indictment; a Second Motion to Suppress Evidence; and a Second Motion to Suppress Statements. A supplemental evidentiary hearing was held on defendant's motions on September 4, 2008. At the conclusion of the testimony at that hearing counsel for the defendant requested that the hearing remain open to permit him to attempt to locate, and present the testimony of, a witness who had information relevant to the issues raised in the defendant's Motion to Suppress Evidence. The request was granted.

On September 9, 2008, the defendant requested that the trial date be continued. On September 11, 2008, the motion was granted and the trial was continued and reset by Judge Shaw to November 3, 2008.

On September 23, 2008, the motion hearing was reconvened and testimony of a witness called by the defendant was heard.

On October 1, 2008, the government filed a Motion to Compel Discovery. The motion was set for hearing and was heard on October 2, 2008. At the hearing on October 2, 2008, the defendant requested leave to testify as to certain issues raised in his motion. The request was granted and the testimony of the defendant was heard. The hearing on defendant's pending motions was then closed.

Defendant's Motions

1. (First) Motion To Suppress Evidence (Docket No. 17) and

2. (Second) Motion To Suppress Evidence (Docket No. 37)

In his motions the defendant seeks the suppression of items of physical evidence allegedly seized during searches of his residence on October 2, 2004 and February 13, 2008. He also seeks to suppress evidence allegedly seized as a result of the subsequent search of a computer and other items seized from his residence on February 13, 2008.

3. (First) Motion To Suppress Statements (Docket No. 18) and

4. (Second) Motion To Suppress Statements (Docket No. 36)

In his motions the defendant seeks the suppression of statements alleged to have been made by him to law enforcement officials on October 2, 2004 and February 28, 2008.

Testimony and evidence was adduced on these motions at the various hearings set out above. From the testimony and evidence adduced at those hearings the undersigned makes the following findings of fact and conclusions of law:

<u>Findings of Fact</u>

On October 2, 2004, at approximately 8:00 p.m., Detective Karen Crocker of the St. Louis, Missouri, Metropolitan Police Department, then assigned to the Sex Crimes Unit, conducted an interview of Donnell McCloud. McCloud was in custody. The interview took place in the office of the Sex Crimes Unit. At the beginning of the interview and prior to any questioning, Detective Crocker orally advised McCloud of his constitutional rights, and specifically that he had the right to remain silent; that anything he said could be used against him; that he had the right to an attorney and to speak with the attorney before questioning if he wished; that if he could not afford an attorney one could be appointed for him; and that if he chose to answer questions, he could stop answering at any time. The defendant said that he understood these rights and agreed to answer questions. Detective Crocker then presented to the defendant a written form again advising the defendant of these same rights. The defendant was told to read each right listed on the form and to place his initials next to each right if he understood. The defendant did so. The defendant then signed the form indicating that he understood his rights and agreed to make a statement. (<u>See</u>

Government's Exhibit 6). Detective Crocker questioned the defendant about allegations that he had sexual relations with a 14 year old girl. The defendant denied the allegations and in summary told Detective Crocker that he had merely let the girl reside with he and his girlfriend. The defendant then said that he wished to terminate the interview and no further questioning took place at that time.

After speaking with the defendant Detective Crocker contacted Teresa Strong, whom she had learned was defendant's live-in girlfriend. The defendant and Ms. Strong resided together at 4019A Giles. Detective Crocker first spoke with Ms. Strong by telephone and then went to and met with Ms. Strong at 4019A Giles. Detective Crocker then told Ms. Strong of the nature of her investigation and told her that McCloud had been arrested and charged. Detective Crocker asked Ms. Strong if she would consent to a search of the residence at 4019A Giles. Detective Crocker told Ms. Strong that she was specifically interested in looking for things that might prove that the defendant had sex with the minor girl, including photographs. Ms. Strong agreed to permit the search. Officer Crocker then presented a written form to Ms. Strong. The form advises of the right to refuse to consent to the search, sets out that permission to search is given voluntarily and without threats or promises. The form sets out that it authorizes a complete search of the building located at 4019A Giles. Ms. Strong signed the form. (See Government's Exhibit 1). Detective

Crocker then conducted a search of the residence, assisted by uniformed officers Andre Spear and Brian Strehl. A number of items were seized including cameras, video camcorder, an SBC calling card, scrap paper and loose photos. At some point during the search Ms. Strong told Detective Crocker that she and the defendant also stored items in the basement area of the residence and told Detective Crocker that the Detective could search in the basement. Detective Crocker then related this information to Officer Strehl and he then went to the basement of the residence. In an unlocked wooden storage area in the basement Officer Strehl found a blue canvas bag. He looked in the bag and saw that it contained numerous photos of nude females. He then took the bag and delivered it to Detective Crocker for seizure. (See Government's Exhibit 1).

Detective Crocker then returned to the police station. Upon arriving at the police station she was informed that the defendant had stated that he wanted to speak with Detective Crocker. She then retrieved him from the holding cell and took him to the Sex Crimes Office. The defendant then told Detective Crocker that he did not know that the girl about whom they had been speaking was a minor. At some point Detective Crocker displayed to the defendant a photo which had been found in the search of 4019 Giles which depicted the minor girl engaged in oral sex with the defendant. The defendant asked Detective Crocker how much "time" he could get if he had in fact had sex with the girl. Detective

Crocker told the defendant that he was being booked for multiple felony charges, to which the defendant responded, "Then do what you gotta do." The interview was then terminated.

On February 13, 2008, Officer Rebecca Smith applied for and obtained a warrant to search the residence at 4019A Giles, St. Louis, Missouri, the application was made to a judge of the Circuit Court of the City of St. Louis, Missouri. The application was accompanied by the affidavit of Officer Smith which set out that a proven reliable informant gave information to Officer Smith that drugs were being sold and used at 4019A Giles by persons known to the informant as "Kansas" and "Reesie." The affidavit set out that Officer Smith and other officers had conducted further investigation, including surveillances, which corroborated information provided by the informant. The affidavit also set out that investigation revealed that Donnell McCloud and Teresa Strong resided at 4019A Giles and that McCloud in the past had used the nickname "Kansas" and that Teresa Strong had in the past used the nickname "Reesie". Based on the information set out in the affidavit, probable cause was found that certain described items could be found on the described property and a warrant was issued authorizing the officers to search for and seize crack cocaine, marijuana, heroin, drug paraphernalia, U.S. currency, weapons, and all record and document storage units pertaining to drug sales. (See Government's Exhibit 2).

On February 13, 2008, Officer Smith and other officers went to 4019A Giles for the purpose of executing the search warrant. Officers of the St. Louis Police Department Mobile Reserve Unit executed the warrant and entered the residence. Upon doing so they encountered Donnell Mccloud emerging, nude, from a bedroom. In the bedroom was a female, also nude, who was later interviewed and found to be 15 years old. The 15 year old girl was interviewed by officers at the scene. She informed them of her age, that she had come to St. Louis on a bus ticket purchased for her by McCloud, that she had engaged in sexual activity with McCloud on numerous occasions, that he had made photographs of her while engaged in these activities and had shown her photos of other females engaged in such activity. She said that he had displayed the photographs to her on a computer.

Officers on the scene then contacted and called to the location Detective Brigid Oldani of the St. Louis Metropolitan Police Department. Detective Oldani is a member of the Regional Computer Crime Education Enforcement Group, a group of detectives trained in the investigation of computer related crimes, and specifically the exploitation of children. Detective Oldani went to 4019A Giles and upon arrival was briefed by the officers and told what had occurred and specifically the information that had been provided by the 15 year old female.

Officer Oldani then participated in a search of the apartment. She found and seized numerous items including 2

computers, cameras, several cellular telephones, floppy discs, flash drives, numerous loose CD ROMS, 2 MP3 players, and VHS videotapes. (<u>See</u> Government's Exhibit 3). All of these items were in the residence in plain view. Detective Oldani did not open or search through any drawers or other closed areas to locate any of the items. Detective Oldani seized these items because she believed they were items of evidence related to the child exploitation activity as had been related to the officer by the 15 year old girl. The officers also found and seized several firearms, numerous rounds of ammunition, 2 pairs of handcuffs and a high school identification card. (<u>See</u> Government's Exhibit 2).

On February 15, 2008, Detective Oldani applied for and obtained a warrant to search the items of evidence that she had seized from 4019A Giles on February 13, 2008. The application was made to a United States Magistrate Judge and was accompanied by the affidavit of Detective Oldani. The affidavit set out the circumstances of the search of 4019A Giles on February 13, 2008,[1] and describes the items seized by Detective Oldani at that time. The affidavit sets out in detail the information provided by the 15 year old girl found on the premises. The affidavit sets out Detective Oldani's training and experience in the investigation of child exploitation, and the production and dissemination of child pornography and her belief, based on her training and experience

_____

[1]The affidavit incorrectly describes the search as having taken place on February 12, 2008.

- 9 -

and information learned in this particular investigation that evidence of those offenses are likely to be found on and in the described items. (See Government's Exhibit 4B). Based on the information set out in the affidavit the Magistrate Judge found probable cause to believe that evidence of the offenses described could be found in or on the items described to be searched. (See Government's Exhibit 4A).

On February 28, 2008, officers of a fugitive apprehension task force arrested Donnell McCloud as he was walking on the street near downtown St. Louis, Missouri. He was arrested based on warrants issued by the Circuit Court of the City of St. Louis. Following the arrest Deputy United States Marshal John Perry advised the defendant of his constitutional rights by reading them to the defendant from a card. Specifically, he told the defendant that he had the right to remain silent; that anything he said could be used against him; that he had the right to speak to a lawyer before questioning, and to have a lawyer present during questioning; that if he could not afford a lawyer one would be appointed for him before questioning if he wished; and that if he decided to answer questions he could stop answering at any time. The defendant said that he understood those rights. Deputy Perry did not question the defendant.

The defendant was then placed in a police vehicle to be transported to the St. Louis jail facility which was just a short distance away. The vehicle was driven by Officer Joseph Kuster of

the St. Louis Metropolitan Police Department.  Although it was unclear from the record, it appears that following his arrest the defendant may have been advised that he was being arrested for numerous charges of statutory rape, statutory sodomy, child molestation and assault.  While en route to the station house the defendant engaged in self initiated banter with Officer Kuster in which the defendant claimed that he knew the officers were policemen before they identified themselves to him.  At some time during the ride the defendant said words to the effect that he liked young teenage girls.  This statement was not in response to any questions put to the defendant by Officer Kuster.  The defendant was booked into the city jail.

Several hours after the defendant's arrest on February 28, 2008, Detective Oldani and F.B.I. Agent Hallie Tichenor went to the jail with the intent of conducting an interview with him.  They met with the defendant and at the beginning of the interview Agent Tichenor advised the defendant of his <u>Miranda</u> rights by reading them to him from a preprinted form.  (<u>See</u> Government's Exhibit 5). After being so advised the defendant said he understood those rights.  The defendant then told the officers that he did not wish to be questioned without a lawyer present and the officers did not question him.  Nevertheless, and in spite of his request for an attorney, the defendant began talking to the officers.  He told them that he had been in trouble in the past on account of his contact with minor females and as a result he was now very careful

to assure the ages of the young women with whom he associated. He made some other comments as well. The officers then told the defendant that they could not talk with him about these matters if he was not willing to waive his rights. The meeting was then terminated. All of these statements were volunteered by the defendant and were not in response to or prompted by an questioning by the officers.

Teresa Strong testified before the court on September 23, 2008. The majority of her testimony centered on the circumstances under which she gave consent to search the premises at 4019A on October 2, 2004, and the scope of that consent. Her testimony agreed with the testimony of Detective Crocker on these matters in some respects and differed in others. Having had the opportunity to see and hear the testimony of both witnesses and to consider all of the factors reflecting on their credibility, the undersigned does credit the testimony of Detective Crocker to the extent that it is necessary to resolve any contradictions in the testimony of the witnesses in order to determine the issues raised in the defendant's motions.

## Discussion

As grounds to suppress the items of physical evidence seized by police officers on October 2, 2004, the defendant asserts that the search and seizure was conducted without a warrant, without permission, without probable cause and without exigent circumstances. He further asserts that Teresa Strong had no real

or apparent authority to consent to a search of the residence, and that even if she did, the search exceeded the scope of the consent given. The evidence adduced at the evidentiary hearing does not support these assertions.

All of the credible evidence adduced at the hearings, including the defendant's own testimony, shows that Teresa Strong was at the time of the search residing with the defendant at 4019A Giles. As such she had authority to consent to a search of the residence. United States v. Matlock, 415 U.S. 164 (1974). The search was lawful because conducted with the voluntary consent of Teresa Strong as evidenced by the express consent form which she signed.

Law enforcement officials may lawfully conduct a search without a warrant if they have the voluntary consent of a person having authority to consent to such search. Schneckloth v. Bustamonte, 412 U.S. 218 (1973); United States v. Bradley, 234 F.3d 363, 366 (8th Cir. 2000). In determining whether a consent to search was voluntary the court must examine the totality of the circumstances in which it was given. Schneckloth v. Bustamonte, supra at 226. In United States v. Chaidez, 906 F.2d 377 (8th Cir. 1990) the Eighth Circuit Court of Appeals set out factors to be considered in determining whether consent to search was voluntarily given. Characteristics of persons giving consent which may be relevant to the question include: (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or

under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their _Miranda_ rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system. _Id._ at 381. Characteristics of the environment in which consent was given include: whether the person who consented (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred. _Id._ The factors should not be applied mechanically, _id._ No single factor is dispositive or controlling. _United States v. Bradley_, _supra_, at 366 (Citing _United States v. Ponce_, 8F.3d 989, 997 (5th Cir. 1993).

Applying these factors in this case leads the undersigned to conclude that the consent to search 4019A Giles given by Teresa Strong to the officers on October 2, 2004, was voluntary. From her testimony and demeanor at the hearing on September 23, 2008, Strong appeared to the undersigned to be of at least average intelligence. There is no evidence that Strong was under the influence of drugs or otherwise intoxicated at the time when consent was given. Strong was advised in writing of her right to refuse to consent to search and acknowledged such understanding in signing the consent

- 14 -

to search form. Strong consented to the search shortly after meeting with Detective Crocker. She was not under arrest or otherwise detained. There is no credible evidence that Strong was threatened or coerced by the officer to induce her consent to search or that any promises or misrepresentations were made to her by the officer to obtain her consent to search. The consent to search form signed by Strong so acknowledges. There is no credible evidence indicating that Strong ever attempted to withdraw her consent or objected in any way as the search was being conducted. The totality of these circumstances show that the consent to search given by Strong was voluntary.

As to the defendant's contention that the search excluded the scope of the consent given, that is, that Teresa Strong's consent did not include permission to search the basement storage area, Detective Crocker's testimony, which the undersigned has found to be credible, is that Teresa Strong told Detective Crocker that there was a basement storage area and that the officers could search that area.

As grounds to suppress the items of evidence seized from 4019A Giles on February 13, 2008, the defendant asserts that the search and seizure exceeded the scope of the warrant because numerous items seized were not named in the warrant as items to be

seized, nor were the items subject to be seized under the plain
view doctrine.[2]

A number of items sought to be suppressed by the
defendant namely a firearm, numerous rounds of ammunition and two
pairs of handcuffs were lawfully seized because they fell within
the ambit of items named in the warrant, that is firearms and
weapons.

The defendant also seeks to suppress certain other items
of evidence seized by the officers including a Lexar Brand Smart
Card 512 MB and depictions contained therein.  Although not
specifically named as items sought to be suppressed in the
defendant's motion, his argument would seem to include the computer
and hard drive, and flash drives seized on February 13, 2008, and
referred to in Counts II and III of the superseding indictment.

The government contends in its response to the
defendant's motion that these items were included in the
description of items to be seized in the warrant, namely "all
records and document storage units."  However, the warrant cannot
reasonably be read to encompass the seizure of the items described.
The warrant specifically refers to "all records and document
storage units <u>pertaining to illegal drugs sales</u>" (Emphasis added).
Nothing in the record indicates that these items were seized

_____

[2]The defendant does not challenge the issuance of the
search warrant nor does he make any claim that the warrant was not
supported by probable cause.  His sole claim is that the seizure of
various items was not authorized by the warrant and that the
seizure of the items was not otherwise lawful.

because the officers believed them to contain evidence relating to illegal drug sales. This is not the end of the matter however. When the officers entered the residence they encountered the defendant in the nude in the company of a nude female whose identity they later learned and who they learned to be 15 years of age. This girl also explained to the officers how she came to be with the defendant. She also told them that she had engaged in sexual activity on numerous occasions with the defendant, that he had made photographs of her engaged in such activity, that he had shown her photos of other females engaged in such activity and had displayed those photos to her on a computer. The computer with hard drive, the smart card and flash drives were all in plain view inside the apartment. Based on the information provided by the girl the officers had probable cause to believe that these items were instrumentalities of a crime and contained evidence of criminal activity.

Police officers who are on a premises lawfully for the purpose of executing a search warrant may seize items of evidence which they find in plain view. Coolidge v. New Hampshire, 403 U.S. 443, 465 (1971); United States v. Gamboa, 439 F.3d 796, 807-08 (8th Cir. 2006); United States v. Pindell, 336 F.3d 1049, 1054-56 (D.C. Cir. 2003).

Thus these items were lawfully seized.[3]

_____

[3]The defendant does not raise any issues relating to the search warrant later sought and obtained by Detective Oldani authorizing the subsequent search of the computer, flash drives and

As grounds to suppress the statements allegedly made by
him to Detective Crocker on October 2, 2004, the defendant asserts
that he "was not read his _Miranda_ rights prior to custodial
interrogation, nor was any knowing and intelligent waiver of these
rights given to law enforcement officials."  He also states that
any statements were not voluntary.

These assertions are not supported by the evidence
adduced at the hearing.  Prior to speaking with the defendant
Detective Crocker advised him of his constitutional rights as
required by _Miranda v. Arizona_, 384 U.S. 436 (1966).  He thereafter
signed a written form acknowledging that he had been advised of and
understood those rights and that he wished to make a statement.
The defendant's written acknowledgment of those rights is "strong
proof of the validity of that waiver."  _North Carolina v. Butler_,
441 U.S. 369, 373 (1979).  After conversing with Detective Crocker
the defendant indicated that he wished to end the interview.
Detective Crocker then ceased the interrogation as she was required
to do.  _Miranda_, 384 U.S. at 473-74.  Later that evening the
defendant said that he wanted again to speak with Detective
Crocker.  She then again met and spoke with the defendant and the
defendant made statements to Detective Crocker.  This subsequent
interview did not violate the precepts of _Miranda_ because the
second and subsequent interview of the defendant was initiated by

---

other items seized by Detective Oldani in the search of 4019A Giles
on February 13, 2008.

him and was made at his request. <u>Oregon v. Bradshaw</u>, 462 U.S. 1039 (1983); <u>United States v. Alexander</u>, 447 F.3d 1290, 1296-97 (10th Cir. 2006); <u>United States v. Hull</u>, 419 F.3d 762, 766-68 (8th Cir. 2005). There is no evidence that any threats, promises or other forms of coercion were made or used against the defendant by Detective Crocker to induce the defendant to waive his rights or to make any statements. Both the waiver and statements were therefore voluntary. <u>Colorado v. Connelly</u>, 479 U.S. 157 (1986).

As grounds to suppress the statements allegedly made by him to law enforcement officials on February 28, 2008, the defendant asserts that he was interrogated by law enforcement officers "despite his clear and unambiguous assertions that he wanted a lawyer present." He also claims he "was not read his <u>Miranda</u> rights and he did not volunteer any statements." He claims that any statements made by him were coerced and not voluntary. He also claims that the statements were the product of an (unspecified) unlawful search and seizure.

Immediately following his arrest on February 28, 2008, the defendant was advised of his <u>Miranda</u> rights by Deputy United States Marshal John Perry. After being so advised the defendant said that he understood those rights. The defendant was then transported to the nearby city jail. En route to the jail he made a statement to Officer Kuster that was unsolicited by any questioning or interrogation by Officer Kuster. In such circumstances the defendant waived his right to remain silent.

United States v. Ingram, 839 F.2d 1327, 1329 (8th Cir. 1988).
Furthermore, such volunteered statements not made in response to
interrogation are admissible in evidence even in the absence of
Miranda warnings. United States v. Tail, 459 F.3d 854, 857-58 (8th
Cir. 2006).

After the defendant was booked into the jail Detective
Oldani and F.B.I. Agent Hallie Tichenor went to the jail in an
effort to interview the defendant. They met with him and advised
him of his rights as required by Miranda v. Arizona, supra. The
defendant said that he understood those rights and then told the
Detective and Agent that he wanted to have an attorney present
before answering questions. They asked the defendant no further
questions but he went on to tell them that he had been in trouble
in the past involving minor females and because of that he was
careful to determine the age of the young females with whom he was
involved. He made several related comments as well. At that point
the defendant was advised that the officers could not discuss these
matters unless the defendant was willing to waive his rights and
the conversation was terminated.

Once a defendant in custody invokes his right to counsel
all questioning by law enforcement officials must cease. Miranda
v. Arizona, 384 U.S. at 473-74. Detective Oldani and Agent
Tichenor did not question the defendant after he invoked his right
to have an attorney present. Nevertheless, the defendant chose to
make spontaneous, volunteered statements in their presence.

Because these statements were not in response to or a result of interrogation by the officers they are admissible in evidence even though made after the defendant had invoked his right to counsel. United States v. Cunningham, 133 F.3d 1070, 1073-74 (8th Cir.), cert. denied, 523 U.S. 1131 (1998).

There is no evidence that any of the statements made by the defendant to any law enforcement official on February 28, 2008, were the result of any threats, promises or other coercion and the statements were therefore voluntary. Colorado v. Connelly, supra.

The defendant's assertion that the statements were the result of an unlawful search and seizure is without merit for the reasons that the searches and seizures at issue here (and presumably to which the defendant refers in his motion) were lawful for the reasons discussed above.

### Conclusion

For all of these reasons the defendant's Motions To Suppress Evidence and Motions To Suppress Statements should be denied.

5.   (First) Motion To Dismiss (Docket No. 16)

and

6.   (Second) Motion To Dismiss (Docket No. 38)

The defendant seeks to dismiss all counts of the indictment claiming that the allegations set out in the various counts do not constitute violations of the statutes cited and that

the statutes are an unconstitutional exercise of the commerce clause and cannot confer jurisdiction in this court.

An indictment is legally sufficient to proceed to trial if it sets forth all of the essential elements constituting the offense charged. Hamling v. United States, 418 U.S. 87 (1974). The defendant is charged in Counts 1, 5 and 6 of the superseding indictment with production of child pornography in violation of 18 U.S.C. § 2251(a). Each of the counts sets out the essential elements of the offense. United States v. Pierson, ___ F.3d. ___, (8th Cir. 2008), Slip. Op. 08-1335, October 20, 2008. The defendant is charged in Counts 2, 3 and 4 of the superseding indictment with possession of child pornography in violation of 18 U.S.C. § 2252 A(a)(5)(B). Each of the counts sets out the essential elements of the offense. Id. The indictment is therefore valid.

As to the defendant's claims that the statutes are an unconstitutional exercise of commerce clause jurisdiction, these claims have been rejected by the Eight Circuit Court of Appeals. United States v. Mugan, 441 F.3d 622, 627-30 (8th Cir. 2006).

Therefore, the defendant's Motions To Dismiss should be denied.

Government's Motions

    1.    (First) Motion For A Determination Of Admissibility Pursuant To 18 U.S.C. § 3501 (Docket No. 14)

        and

2.    (Second) Motion For A Determination Of Admissibility
Pursuant To 18 U.S.C. § 3501 (Docket No. 33)

In view of the findings and conclusions relating to the
defendant's Motions To Suppress Statements, the government's
motions should be granted.

3.    Motion To Compel Discovery (Docket No. 56)

In its motion the government seeks an order requiring the
defendant produce for the government to inspect and copy any
material or information that the government is entitled to discover
from the defendant under Rule 16(b), Federal Rules of Criminal
Procedure.  The government also requests that the defendant produce
to the government any statements of witnesses that the defendant
calls at trial, pursuant to Rule 26.2(a), Federal Rules of Criminal
Procedure.   The government avers in its motion that it has
previously requested such production from the defendant, in
writing, but that the defendant has not responded to the request.
The defendant has filed no response to the government's motion.

To the extent that the government requests that the
defendant permit the government to inspect and copy all of the
material and information that it is permitted to discover from the
defendant pursuant to Rule 16(b), Federal Rules of Criminal
Procedure, the motion should be granted.

To the extent that the government requests that the
defendant be required to produce, prior to trial, statements of any
witness that he intends to call at the trial the motion should be

- 23 -

denied. The defendant is not required to disclose the statements of his witnesses prior to the trial of the case. <u>See</u> Rules 16(b)(2)(B)(iii) and 26.2.(a), Federal Rules of Criminal Procedure. <u>United States v. Felt</u>, 502 F.Supp. 71 73-74 (D.D.C. 1980).

Therefore, the government's motion should be granted in part and denied in part.

Accordingly,

**IT IS HEREBY RECOMMENDED** that defendant's (First) Motion To Suppress Evidence (Docket No. 17); (Second) Motion To Suppress Evidence (Docket No. 37); (First) Motion To Suppress Statements (Docket No. 18); and (Second) Motion To Suppress Statements (Docket No. 36) be denied.

**IT IS FURTHER RECOMMENDED** that defendant's (First) Motion To Dismiss (Docket No. 16); and (Second) Motion To Dismiss (Docket No. 38) be denied.

**IT IS FURTHER RECOMMENDED** that the government's (First) Motion For A Determination Of Admissibility Pursuant To 18 U.S.C. § 3501 (Docket No. 14); and (Second) Motion For A Determination Of Admissibility Pursuant To 18 U.S.C. § 3501 (Docket No. 33) be granted.

**IT IS HEREBY ORDERED** that the government's Motion To Compel Discovery (Docket No. 56) is granted in part and denied in part.

The parties are advised that they have to and including **October 31, 2008,** in which to file written objections to this Report and Recommendation. Failure to timely file objections may result in waiver of the right to appeal questions of fact. <u>Thompson v. Nix</u>, 897 F.2d 356, 357 (8th Cir. 1990).

_Frederick R. Buckles_
UNITED STATES MAGISTRATE JUDGE

Dated this 23rd day of October, 2008.